[Cite as *In re G.C.*, 2017-Ohio-4226.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: G.C., et al. :

                                          CASE NOS. CA2016-12-237

:                                CA2016-12-238

                                          CA2016-12-239

:                                CA2016-12-240

:                       O P I N I O N
                               6/12/2017

:

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2014-0082 and JN2014-0083

Steven R. Sharpe, Legal Aid Society of Southwest Ohio, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, Guardian Ad Litem for children

Michael O. Finnigan, 9475 Kenwood Road, Suite 12, Cincinnati, Ohio 45242, Guardian Ad Litem for mother

Amy R. Ashcraft, P.O. Box 172, Seven Mile, Ohio 45062, for appellant, A.S.

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant, M.C.

Michael T. Gmoser, Butler County Prosecuting Attorney, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

**S. POWELL, P.J.**

{¶ 1} Appellants, the biological parents ("Mother" and "Father") of G.C. and P.C. (referred to collectively as the "children"), appeal a decision of the Butler County Court of

Common Pleas, Juvenile Division, denying appellants' individual motions for legal custody and granting permanent custody of the children to appellee, the Butler County Department of Job and Family Services ("BCDJFS").

{¶ 2} On March 5, 2014, BCDJFS filed a complaint alleging dependency and neglect, and requested temporary custody of the children. The complaint alleged BCDJFS received reports alleging drug abuse by Mother, a history of domestic violence between Mother and Father including, but not limited to, Father's prior convictions for felonious assault and domestic violence against Mother and an anonymous call regarding ongoing verbal and physical altercations between the parents, reports of inadequate feeding of the children and possible abuse, a threatening incident between Father and the children's day care facility, and an unannounced home visit where Mother appeared "extremely overwhelmed and unable to cope with the children's behavior." Based on these allegations, the magistrate found probable cause to issue an emergency order necessary to prevent immediate or threatened harm to the children and placed them in the temporary custody of BCDJFS.

{¶ 3} On April 1, 2014, the parties stipulated to a finding of dependency and neglect, without naming a perpetrator of the neglect. Based on this agreement, the magistrate made such finding and adopted the facts as set forth in the complaint. BCDJFS developed case plans for the parents with the goal of reunification. The case plans required the parents to participate in domestic violence assessments, obtain and maintain stable housing and income, complete parenting education services, participate in random drug screenings including substance abuse assessments following any positive tests, and psychological assessments. Throughout the time the children were in the temporary custody of BCDJFS, the parents completed many of the services required in their individual case plans, including regularly attending visitation. Overtime, the parents' visitation progressed to overnight unsupervised visits until a physical altercation occurred on July 25, 2015 (hereinafter,

referred to as the "July 2015 altercation").

{¶ 4} The physical altercation involved Mother, Father, and Paternal Grandfather, and occurred in the presence of the children. The altercation ended when police removed Mother from Paternal Grandfather's residence. Following this incident, the magistrate granted BCDJFS's motion to change visitation to supervised visits. On August 17, 2015, Father requested a shelter care hearing due to the change in visitation. Following a hearing on the matter, the magistrate continued the modified supervision schedule.

{¶ 5} Both Mother and Father individually moved for legal custody of the children, and on September 25, 2015, BCDJFS moved for permanent custody of the children. The magistrate held a trial on the three pending motions over several dates beginning on April 11, 2016. At trial, the magistrate heard testimony from three visitations specialists, Paternal Grandfather, Father, three parenting instructors, two caseworkers, Mother's therapist, Maternal Grandmother, Mother, Foster Mother, and the children's guardian ad litem ("GAL").

{¶ 6} The visitation specialists collectively testified they observed a bond between Father and the children, did not identify any concerns with Father's interaction with the children, and stated Father appropriately disciplined the children when required. One specialist stated she would be comfortable moving Father to the highest level of visitation, which requires the least amount of supervision during visits.

{¶ 7} Paternal Grandfather testified Father currently resides with him and has been there for approximately two years, but Father did not reside with him when the magistrate granted temporary custody of the children to BCDJFS. Mother also resided with Paternal Grandfather from approximately winter 2014 to mid-summer 2015, including during the July 2015 altercation. Regarding the altercation, Paternal Grandfather testified an argument between Father and Mother woke him up in the middle of the night. Paternal Grandfather proceeded to walk upstairs where he saw Mother hitting Father, which prompted Paternal

Grandfather to ask Mother to stop. In response, Mother leapt downstairs where she proceeded to yell and hit Paternal Grandfather, who physically removed Mother from the house until the police arrived. Paternal Grandfather further testified the children witnessed the altercation and that Father and Mother often verbally fought. Following the July 2015 altercation, Mother resided at Paternal Grandfather's residence for approximately two to three weeks.

{¶ 8} Father and Mother each testified describing their relationship as "volatile." Before initiation of the present case, Father testified he called BCDJFS several times due to ongoing concerns about the children when they resided solely with Mother. Mother testified they began their relationship in 2005 and within less than a year, Father became physically aggressive. Father testified he served four years in prison for his prior convictions for felonious assault and domestic violence wherein a gun was involved and Mother was the victim. Despite these convictions, their relationship continued throughout Father's incarceration and after his release, resulting in the birth of the children. In addition to these convictions, Father also has a domestic violence conviction involving a different victim, as well as a disorderly conduct conviction that arose from a different altercation with Mother. Father testified there have been many domestic disturbances between him and Mother.

{¶ 9} Father further testified that Mother would come over and see the children during his unsupervised visitation before the magistrate granted Mother unsupervised visitation, which ceased following the July 2015 altercation. Father testified the July 2015 altercation began when he confronted Mother regarding a text message on her phone revealing her intent to have sexual relations with someone else. The confrontation escalated when Father broke Mother's phone over his knee, which prompted Mother to become upset and begin hitting him. Despite Mother's forced removal from the residence the night of the altercation, she returned after a couple of days for approximately two to three weeks. Mother's testimony

contradicted Father's testimony regarding who was the aggressor. Mother testified Father confronted her, and then, proceeded to choke her and break her phone. Father indicated he does not intend to get back together with Mother, but both Mother and Father testified they believed they could co-parent the children.

{¶ 10} With respect to his case plan services, Father indicated he has learned to better control his emotions and anger, especially around the children. Jane Behari, Father's parenting instructor since December 2015, testified regarding an incident where Father became upset, which made her feel threatened because of his escalating body language and choice of words. Despite this incident, she had no present concerns at the hearing regarding the parenting skills Father demonstrated during visits and she stated he has improved his ability to control his emotions. The caseworkers assigned to this case testified there were ongoing concerns following the July 2015 altercation with Mother and Father's ability to follow court orders and that the couple may have been engaged in an ongoing relationship at the time of the filing for permanent custody. The caseworkers further identified Father's prior marijuana usage and the parents' inability to co-parent considering the history of domestic violence as continued concerns for reunification. In addition to these concerns, the caseworkers testified Father completed his case plan services, there is a strong bond between Father and the children, Father obtained stable housing and employment, and has had mostly negative drug screens.

{¶ 11} Finally, the GAL for the children cited several reasons in his written report and recommendation for the magistrate to place the children in the permanent custody of BCDJFS. The GAL described Father's severe history of domestic violence that has continued throughout the pendency of this case as well as Mother's instability due to mental health concerns. The GAL expressed his continued doubts the parents will end their relationship, which has generated substantial violence, including violence in front of the

children. Despite substantial compliance by Mother and Father with their respective case plans, the GAL asserted there is no suitable placement available for the children other than granting permanent custody to BCDJFS because placing the children with Mother or Father would place them in substantial risk. Additionally, the GAL cited the healthy and supportive relationship the children have established with the foster parents and foster siblings, who have demonstrated the ability to meet the needs of the children and have expressed a desire for adoption.

{¶ 12} Following the conclusion of the hearings, the magistrate granted BCDJFS's permanent custody motion and denied Mother and Father's respective legal custody motions. Both parents objected to the magistrate's findings. The juvenile court held a hearing on the matter, and then, overruled the parents' objections. The present appeals followed.

Father's Appeal

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN NOT REVIEWING THE ENTIRE RECORD PRIOR TO AFFIRMING THE MAGISTRATE'S DECISION.

{¶ 15} Assignment of Error No. 2:

{¶ 16} IN THE ALTERNATIVE TO THE FIRST ASSIGNMENT OF ERROR, TRIAL COUNSEL FOR APPELLANT WAS INEFFECTIVE FOR FAILING TO PROVIDE THE ENTIRE TRANSCRIPT TO THE TRIAL COURT UPON OBJECTION TO THE MAGISTRATE'S DECISION.

{¶ 17} Father challenges the juvenile court's review of the magistrate's decision. Father contends the juvenile court erred in overruling his objections on the basis his trial counsel failed to file a full transcript of the hearings before the magistrate. Specifically, Father asserts trial counsel did not provide the juvenile court with the portion of the transcript containing the cross-examination of the GAL and closing arguments; therefore, the juvenile

court did not conduct an independent review within the parameters of Civ.R. 53.

{¶ 18} A party must support objections to a magistrate's factual findings with a transcript or an affidavit of the evidence submitted to the magistrate. Civ.R. 53(D)(3)(b)(iii). Pursuant to Civ.R. 53(D)(4)(d), in ruling on timely filed objections to a magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." However, the mere fact the trial court did not cite any specific portion of a transcript or exhibit does not demonstrate the court failed to conduct an independent review of the objected matters as required by Civ.R. 53(D)(4)(d). *Moellering Industries, Inc. v. Nalagatla*, 12th Dist. Warren No. CA2012-10-104, 2013-Ohio-3995, ¶ 10. Rather, "[w]hile citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R. 53(D)(4)(d) that the trial court do so." *Hampton v. Hampton*, 12th Dist. Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 17. Therefore, unless the appellant affirmatively demonstrates the trial court failed to perform its duty under Civ.R. 53(D)(4)(d) to conduct an independent review, an appellate court must presume the regularity of the proceedings below. *Barrientos v. Barrientos*, 3d Dist. Hancock No. 5-11-22, 2011-Ohio-5734, ¶ 5.

{¶ 19} Father claims the trial court abused its discretion by failing to comply with the requirements of Civ.R. 53(d)(4)(d) because the trial court did not have the full transcript of the proceedings before the magistrate when it ruled on Father's objections. We review Father's claim under Civ.R. 53 for an abuse of discretion. *See Cox v. Cox*, 12th Dist. Warren No. CA2016-05-040, 2017-Ohio-1010, ¶ 17. An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v.*

*Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 20} To support his contention, Father cites an Eighth District opinion where deficiencies in the record prevented the appellate court from conducting a meaningful review of the trial court's best interest determinations. *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 38-39. However, contrary to Father's claim otherwise, the opinion cited by Father provides little guidance in resolving his first two assignments of error because no such deficiency exists in the record preventing *this court* from conducting a meaningful review of the trial court's findings. Father's argument is the trial court could not have conducted such review when ruling on Father's objections, not that *we* are unable to conduct a meaningful review.

{¶ 21} Additionally, Father's argument asks this court to speculate as to whether the juvenile court reviewed the alleged omitted portion of the transcript because he fails to affirmatively demonstrate the juvenile court did not conduct such review. "[S]imply because a trial court adopted the magistrate's decision does not mean that the court failed to exercise independent judgment." *Pietrantano v. Pietrantano*, 12th Dist. Warren No. CA2013-01-002, 2013-Ohio-4330, ¶ 14. Rather, the juvenile court specifically stated in addressing Father's objections that it conducted a review of the complete record. Moreover, Father's objection motion states: "Father also Moves the Court to Order the Transcripts for the motion hearing of April 11, 12, July 25, 26, and August 1, 31, 2016 to be prepared at no cost." Thus, Father's trial counsel requested preparation of the complete transcript for the juvenile court, including the alleged omitted testimony on August 31, 2016.

{¶ 22} Father further contends that confusion at the objection hearing suggests the juvenile court did not possess the full transcript. However, the discussion Father relies upon involves an objection to a reference to testimony and the confusion concerns the page number of the testimony in the transcript. The GAL indicated he did not have a transcript

- 8 -

when asked to cite the transcript page, but the record does not reflect any indication the juvenile court did not have a transcript. Without affirmatively demonstrating to the contrary, we presume the regularity of the proceedings below. Moreover, we find no error by the juvenile court, even assuming it did not have the alleged omitted portion of the transcript. *Stevens v. Stevens*, 12th Dist. Warren Nos. CA2009-02-028 and CA2009-06-073, 2010-Ohio-1104, ¶ 23 (stating if a party fails to file a transcript, it is well-established the court is "free to adopt the magistrate's findings without further consideration of the objections").

{¶ 23} In the alternative, Father asserts his trial counsel was ineffective. To support his claim, Father argues trial counsel was deficient for failing to file a complete transcript resulting in prejudice due to the juvenile court's inability to conduct a full independent review. Typically, a claim for ineffective assistance of trial counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration in its application. *Rafeld v. Sours*, 5th Dist. Ashland No. 14 COA 006, 2014-Ohio-4242, ¶ 15. However, there is an exception for such claims in civil permanent custody appeals. *In re Tyas*, 12th Dist. Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 4.

{¶ 24} To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that his trial counsel's performance was deficient, and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984); *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to

consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 25} As stated above, Father fails to affirmatively demonstrate the juvenile court did not consider the alleged omitted portion of the transcript, considering the juvenile court's judgment entry stating it reviewed the complete record as well as Father's objection motion requesting the alleged omitted portion of the transcript. Nevertheless, even assuming deficiency, Father's claim for ineffective assistance of trial counsel still fails because he has not demonstrated resulting prejudice. A review of the alleged omitted portion of the transcript reveals Father's cross-examination of the GAL was neither pertinent to the magistrate's best interest finding nor relevant to Father's objections thereto. The cross-examination included testimony regarding Father's completion of case plan services, Father's housing and employment, and Father's communication to the GAL that his relationship with Mother ended. This testimony is merely cumulative of extensive testimony in the record during earlier hearings. Further, the magistrate made such findings in its decision granting permanent custody. Thus, the cross-examination provided no new evidence for the juvenile court to consider in its independent review of the magistrate's decision. Additionally, trial counsel provided a brief closing argument, spanning two and one-half pages of the transcript. However, the record reveals the juvenile court provided trial counsel an opportunity for argument, as trial counsel presented oral argument at the objection hearing spanning five pages of the transcript. Therefore, Father fails to demonstrate any resulting prejudice.

{¶ 26} Accordingly, Father's first and second assignments of error are overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED IN FINDING THAT LEGAL CUSTODY TO APPELLANT WAS NOT IN THE CHILDREN'S BEST INTEREST AND BY GRANTING PERMANENT CUSTODY TO [BCDJFS].

{¶ 29} Father asserts the juvenile court abused its discretion by denying Father's motion for legal custody and that there is no competent credible evidence in the record to grant BCDJFS's motion for permanent custody. Thus, Father argues reunification with him is in the best interest of the children. Father contends the bases for the juvenile court's findings are misguided because Father rectified BCDJFS' initial concerns in its complaint. Specifically, Father states his criminal history of domestic violence occurred prior to the birth of the children, he substantially complied with his case plan services, and any ongoing concerns are solely attributed to Mother.

{¶ 30} Although Father's third assignment of error simply states the trial court erred by granting permanent custody of the children to BCDJFS and by denying Father's motion for legal custody for not being in the children's best interest, we construe his assignment of error as claiming the findings are against the manifest weight of the evidence. In considering such a claim, "a reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 21. A presumption the juvenile court's findings are correct guides our review. *Id.* Therefore, where a substantial amount of credible and competent evidence supports such finding, we will not reverse the juvenile court's determination on the grounds it is against the manifest weight of the evidence. *Id.*

{¶ 31} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to

- 11 -

raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child[ren]." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 32} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 33} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant

factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 34} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 35} In granting BCDJFS' motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearings. With respect to the first statutory factor, the juvenile court found Father has a bond with the children and possesses the ability to control the children when under his care. The children enjoy their time with him and demonstrate affection. Father has had relatively minor issues during visits and attempts to implement advice in a timely fashion. However, the juvenile court found the relationship between Mother and Father has been historically troubled over approximately nine years, including an extensive history of domestic violence. The juvenile court noted Father's prior convictions for felonious assault and domestic violence, which involved a firearm wherein Mother was the victim. The juvenile court further noted Father's prior convictions for domestic violence with a different victim and disorderly conduct involving another altercation with Mother. The juvenile court found the parents' conflict-riddled relationship continued to affect Father's relationship with the children, as demonstrated by the July 2015 altercation, which resulted in Father's visitation being restricted to supervised visits. Additionally, the juvenile court considered the loving relationship between the children and the foster family where the children appear to be thriving, and the foster family has expressed an interest in adoption.

{¶ 36} In consideration of the second statutory factor, the juvenile court did not conduct an interview with the children due to their age. The GAL conveyed the wishes of the children to the juvenile court through his report and recommendation opposing placement of the children in the legal custody of Mother or Father and supporting permanent custody to BCDJFS. The GAL opined Father's severe history of domestic violence before and during the pendency of this case coupled with Mother's individual instability and the instability in the parents' relationship create a substantial risk to the children if placed with Mother or Father.

{¶ 37} With respect to the third statutory factor, the juvenile court reviewed the

children's custodial history and found the children were adjudicated dependent and neglected and had been in the temporary custody of BCDJFS for 12 or more months of a consecutive 22-month period.

{¶ 38} In considering the fourth statutory factor, the juvenile court found credible evidence indicated Father has a "deep, meaningful, and healthy bond with his children" and clearly loves them. Father has been consistent in attending visits and he obtained stable housing. However, the juvenile court further found it must temper these considerations with his propensity to engage in acts of violence or to be enmeshed within acts of violence. Examples of this behavior include his prior domestic violence convictions, including but not limited to, the long history of disputes with Mother, as well as an incident where a visitation specialist felt threatened during a supervised visit. The juvenile court noted these events continue to occur despite Father's progress within his case plan, including domestic violence and anger management training. Additionally, the juvenile court found considering this factor alone without regard to the relationship between Mother and Father would be improper. The juvenile court described the parents' relationship as "co-dependent, enmeshed, and toxic" and marred by several domestic disputes spread over approximately nine years. The juvenile court found that only after assuming the end of this relationship, would it be possible for Father to provide a legally secure home for the children. Although there would still be concerns with co-parenting given Mother's instability.

{¶ 39} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to BCDJFS. In so doing, the juvenile court further found Father has failed continuously and repeatedly to substantially remedy the conditions that caused the children's placement outside the children's home. Father disputes the juvenile court's findings and argues the evidence did not support a grant of permanent custody. In so doing, Father asserts he completed his case

plan services, actively applied the lessons taught in such services, can provide stable and secure housing and employment, has a strong bond between him and the children, and there are no allegations of inappropriateness or violence by him towards the children. Father asserts the juvenile court improperly based its findings on his relationship with Mother because the relationship is over.

{¶ 40} After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence. Though Father has made efforts to meet the requirements of his respective case and has a clear bond with the children, there are compelling reasons to weigh the best interest factors in favor of permanent custody to BCDJFS. Prior to the filing of the complaint, BCDJFS was informally involved with the family, which began in spring 2013 and included several home visits. Based on its observations and outside reports, BCDJFS requested an emergency order for temporary custody of the children. Among other reasons cited in the complaint, BCDJFS initially requested removal of the children due to the couple's long history of domestic violence, which has continued throughout this case.

{¶ 41} Father contends his relationship with Mother is permanently over and that she is no longer welcome at his residence. However, credible evidence presented at trial contradicts Father's contention. The relationship began in high school and disputes began to arise less than one year after its commencement. These disputes have continued throughout their on-again, off-again, relationship for approximately nine years. Within this nine-year span, several violent altercations occurred including, but not limited to, Father's incarceration for four years for shooting Mother, Father's conviction for disorderly conduct involving Mother, and the July 2015 altercation during an overnight unsupervised visitation with the children. This most recent violent altercation in July 2015 was still insufficient to

bring their tumultuous relationship to its end, as Mother moved back into Paternal Grandfather's residence with Father for approximately two to three weeks. Although Father was aware the violent altercations stemming from his relationship with Mother were the main underlying concern causing the initiation of the present case by BCDJFS, and ultimately, the removal of the children, the relationship continued throughout the pendency of the case. Even after yet another violent altercation that the children witnessed during an overnight visit, Mother moved back into Paternal Grandfather's residence temporarily.

{¶ 42} While Father has demonstrated dedication to completing his case plan, credible evidence supports the juvenile court's finding he has failed to remedy the conditions causing the children's removal. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23 (a parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal); *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32. Moreover, successful completion of one's case plan is not dispositive of the issue of reunification. *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30 ("it is well-settled that the completion of case plan services alone does not equate to, or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home"). Thus, the case plan is a means to the goal of reunification, but not the goal itself. *In re V.N.*, 12th Dist. Butler Nos. CA2016-12-229, CA2016-12-230, CA2016-12-235, and CA2016-12-236, 2017-Ohio-2586, ¶ 34.

{¶ 43} Therefore, as the juvenile court found, Father's propensity to engage in acts of violence or to be enmeshed within acts of violence clearly continues to be an ongoing concern. The history of domestic violence between Father and Mother heightens this concern, including the July 2015 altercation, which occurred in front of the children. Whereas, as the juvenile court found, the record is scant of credible evidence to support

Father's assertion the relationship will not continue. Despite notice that his relationship with Mother remained a significant concern for reunification, it was not until one month prior to BCDJFS' motion for permanent custody that the violence-riddled relationship allegedly ended. The violent July 2015 altercation between Mother and Father was the last straw and, no doubt, precipitated the filing of the motion for permanent custody. It is only under the pressure wrought by the pendency of this motion that Father has, apparently, found the resolve to separate himself from Mother. Should Father be granted legal custody of the children, that pressure evaporates and a resumption of the violent on-again, off-again relationship of Mother and Father becomes more likely.

{¶ 44} Indeed, even if we accept Father's assertion the relationship has met its end, an award of legal custody to Father would necessitate contact between Mother and Father as co-parents. Thus, there is good reason to believe that any future contact between the couple could again culminate into another violent altercation in front of the children. Father had ample time to demonstrate he could end his volatile relationship with Mother, and, a year and a half into the case, was unable or unwilling to do so. The evidence supporting Father's claim that he and Mother are through depends almost entirely upon events occurring after the filing of the motion for permanent custody. The long-standing, on-again, off-again, relationship between Mother and Father, despite extreme violence and volatility, is clear and convincing evidence that it will resume when they are not under the microscope of BCDJFS and the pressure of having their parental rights terminated.

{¶ 45} "It is important to have finality in custody determinations to protect the best interest of the child[ren]." *In re A.L.A.*, 11th Dist. Trumbull No. 2016-T-0022, 2016-Ohio-5887, ¶ 20. The children have been in a custodial purgatory during the 18-month pendency of this case prior to BCDJFS filing its motion for permanent custody. The children are young and need to know whom they may rely upon for their care and nurture. Their foster family

has indicated a willingness to adopt them should they become available for adoption. One must be concerned whether this will remain the case if Father is granted legal custody and he and Mother resume their violent relationship, as their history portends. Under these circumstances, permanency for the children is not promoted by awarding Father legal custody and denying the motion for permanent custody. The initiation of this case occurred over two years ago, and despite Father's dedication to completing his case plan, the concerns causing removal of the children have yet to be remedied. The children deserve a stable environment without the lingering threat of violence occurring at any moment between their parents. Accordingly, the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence

{¶ 46} Next, Father asserts the juvenile court erred by denying his motion for legal custody of the children. An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919, ¶ 26. We accord the utmost respect to the discretion of the trial court in custody matters, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned. *S.H. v. C.C.*, 12th Dist. Madison No. CA2006-12-051, 2007-Ohio-4359, ¶ 13.

{¶ 47} "R.C. 2151.353(A)(3) provides that if a child is adjudicated a dependent child, the court may award legal custody of the child 'to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child.'" *In re A.R.* at ¶ 13, quoting R.C. 2151.353(A)(3). "Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact[,]" and "[u]nlike permanent custody, granting legal custody does not terminate the parent-child relationship." *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. A

juvenile court must base its custody determination under R.C. 2151.353 on the best interest of the children. *See In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. Pursuant to R.C. 3109.04(A)(1), in making a custody determination, the juvenile court must consider all relevant factors including, but not limited to, any applicable factors set forth in R.C. 3109.04(F). *Id.* at ¶ 14.

{¶ 48} As indicated above, the juvenile court did not err when it found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to BCDJFS. It is a much more rigorous standard to grant permanent custody to a public children services agency than to grant legal custody to a parent. *See In re M.*, 1st Dist. Hamilton No. C-17008, 2017-Ohio-1431, ¶ 29. Furthermore, the statutory scheme for determining whether to grant permanent custody and whether to award legal custody do not include a specific test or set of criteria, but rather, require courts to consider all the relevant factors to determine the best interest of the children. *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 15; *see also* R.C. 2151.414(D)(1); R.C. 3109.04(F)(1). As analyzed above, the juvenile court extensively considered all the relevant factors in making its determination permanent custody was in the best interest of the children.

{¶ 49} Therefore, having found no error in the juvenile court's decision granting BCDJFS permanent custody of the children and denying Father's motion for legal custody, Father's third assignment of error is overruled.

### Mother's Appeal

{¶ 50} Counsel for Mother has filed a brief with this court pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), which (1) indicates that a careful review of the record from the proceedings below fails to disclose any errors by the trial court prejudicial to the rights of Mother upon which an assignment of error may be predicated, (2) lists one

potential error "that might arguably support the appeal," *Anders* at 744, (3) requests that this court review the record independently to determine whether the proceedings are free from prejudicial error and without infringement of Mother's constitutional rights, (4) requests permission to withdraw as counsel for Mother on the basis that the appeal is wholly frivolous, and (5) certifies that a copy of both the brief and motion to withdraw have been served upon Father.

{¶ 51} Having allowed Mother sufficient time to respond, and no response having been received, we have accordingly examined the record and find no error prejudicial to Mother's rights in the proceedings in the trial court. Therefore, the motion of counsel for Mother requesting to withdraw as counsel is granted, and the Mother's appeal is hereby dismissed for the reason that it is wholly frivolous.

## Conclusion

{¶ 52} The assignments of error raised by Father are overruled and the trial court's decision granting permanent custody to BCDJFS is affirmed. Mother's appeal is dismissed and her counsel's request to withdraw is granted.

M. POWELL, J., concurs.

RINGLAND, J., concurs in part and dissents in part.

**RINGLAND, J., concurring in part and dissenting in part.**

{¶ 53} I agree with the majority as to the grant of permanent custody against Mother. However, I respectfully dissent as to the findings and decision as it relates to Father.

{¶ 54} As the majority acknowledges, parents have a constitutionally protected, fundamental interest in the care and custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982). "The permanent termination of parental rights has been

- 21 -

described as the family law equivalent of the death penalty in a criminal case." *In re C.M.*, 12th Dist. Butler No. CA2014-10-204, 2015-Ohio-1702, ¶ 8.

{¶ 55} This is a case where BCDJFS simply decided that removal was inevitable no matter the evidence presented or parental progress achieved during the pendency of the matter. No amount of progress, evidence of compliance with the case plan, or completion of services could change the predetermined result. No amount of improvement would inure to Father's position or allow for reunification. I unfortunately believe that this case stands for the proposition that a children's services agency can choose to ignore any such progress in furtherance of their predetermined result.

{¶ 56} In this case, testimony of the witnesses established that Father has achieved a great deal of success during the pendency of this matter. *See* R.C. 2151.414 (specifying that the court should consider *all* relevant factors in the best interest determination). Father has taken responsibility for his past actions and realizes the consequences if he does not address his anger control issues. Namely, Father has sought to control these issues to make sure that the children remain a part of his life. Father has learned through anger management programs to control his anger and has ceased his relationship with the children's mother. Father has obtained stable employment, stable housing, and has shown that he can effectively parent his children. While the majority emphasizes Father's past incidents of domestic violence, it is important to note that such actions, while reprehensible and punished accordingly, were never directed towards the children. He has been described as a caring father and loved by his children.

{¶ 57} The majority posits that, without the involvement of children's services, Father would be relieved of the pressure to deal with his anger issues and that Father and Mother would inevitably begin cohabitating, creating the same self-destructive issues. The majority also argues that the children would be subject to co-parenting, thus allowing the parents to

- 22 -

create the same problems as before. While I realize that nobody can predict the future, we should not be so quick to judgment when other viable alternatives still exist. *In re S.D.*, 8th Dist. Cuyahoga Nos. 99410, 99411, and 99412, 2013-Ohio-3535, ¶ 23 ("[i]t gives us great trepidation to consider that appellant's parental rights are to be terminated when a potentially viable reunification option has not been adequately explored").

{¶ 58} The testimony shows that Father realizes the future ramifications if he reverts to his prior behavior or fails to avoid the pitfalls of his relationship with Mother. Father has demonstrated that he is motivated to remain with his children. A review of the permanent custody trial reflects that more evidence was presented to support reunification than negates it. In fact, the thrust of the state's argument is based on Father's reaction to Mother during their time residing together. While it may be easy to cite a past on-again, off-again relationship as toxic and inevitable, we should exercise caution in our judgment considering other relevant facts. Here, there is no evidence to show that the parties have had any contact since August 2015. Both Mother and Father deny further cohabitation and no evidence suggests that they continue to do so. Again, it gives me great trepidation to terminate parental rights when there is a viable reunification option.

{¶ 59} Based upon these facts, I cannot say that the record contains clear and convincing evidence that it is in the best interest of the children to be placed in the permanent custody of BCDJFS. Because I do not see clear and convincing evidence to support the removal of the children from their natural father, I must respectfully dissent.