[Cite as *In re A.F.*, 2022-Ohio-3753.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: A.F. & E.F. | : | **JUDGES:** |
|  | : | Hon. Earle E. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No.     22CA000008 |
|  |  |             22CA000009 |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Civil appeal from the Guernsey County
Court of Common Pleas, Juvenile Division,
Case Nos. 20-JC-00290 & 20-JC-00052

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 20, 2022

APPEARANCES:

For Appellant – J.M.
FREDERICK SEALOVER
Box 2910
Zanesville, OH 43702-2910

For-Appellee - GCCS
MELISSA WILSON
274 Highland Avenue
Cambridge, OH 43725

For T.R.
JOSHUA W. PAMMEER
17 North 8th Street
Cambridge, OH 43725

Guardian Ad Litem
RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, OH 43701

*Gwin, J.,*

{¶1}   Appellant-mother A.M. appeals the April 19, 2022 Judgment Entry of the Guernsey County Court of Common Pleas, Juvenile Division that terminated her parental rights with respect to her minor children A.F. and E.F and granted permanent custody of the children to appellee, Guernsey County Children Services (hereinafter "GCCS").

*Facts and Procedural History*

{¶2}   A.M. is the biological mother of E.F. (b. June 13, 2009) and A.F. (b. Dec. 21, 2016)[1].

{¶3}   In Case Number 20JC-0052, GCCS took emergency custody of E.F. on February 14, 2020. [Docket Entry No. 1]. On February 18, 2020, GCCS filed a complaint alleging E.F. to be a dependent child. [Docket Entry No. 2]. By Judgment Entry filed May 22, 2020 E.F. was found to be a dependent child. [Docket Entry No. 37].

{¶4}   In Case Number 20JC-00290, GCCS took emergency custody of A.F. on October 22, 2020. [Docket Entry No. 5]. On October 23, 2020, GCCS filed a complaint alleging A.F. to be a dependent child. [Docket Entry No. 1]. On November 4, 2020, an Amended Complaint was filed that alleged A.F.'s paternity had not been established as to the father. [Docket Entry No. 19]. By Judgment Entry filed January 22, 2021, A.F. was found to be a dependent child. [Docket Entry No. 33].

{¶5}   By Judgment Entry filed February 2, 2021, the juvenile court consolidated A.F. and E.F.'s cases. [Docket Entry No. 35].

---

[1] Father is incarcerated and has been since 2015. His first chance to be eligible for parole will be 2053. *Judgement Entry* filed Apr. 19, 2022 at 1. [Docket Entry No. 106].

{¶6}    On October 27, 2021, GCCS filed a motion seeking Permanent Custody of E.F. and A.F.  The hearing on the motion was commenced on April 8, 2022.

*Permanent Custody Hearing*

{¶7}    E.F. had been on a safety plan with his maternal great-grandmother J.M. from March 20, 2019 through May 31, 2019.  T. at 71.  E.F. was then returned home.  E.F. was again placed under a safety plan from January 23, 2020 through February 7, 2020 with his maternal grandmother W.M. T. at 72.  When the grandmother's work scheduled prevented her from caring for E.F., E.F. was placed on a third safety plan with a relative, T.C., from February 7, 2020 through February 14, 2020.  T. at 72.  The reason for the safety plans concerned E.F.'s truancy.  Id. at 72-73.

{¶8}    A.F. was on a safety plan from November 30, 2019 through October 14, 2020.  T. at 73.  A.F. was placed on the safety plan because he was found in the road, and had been left alone in a running car.  T. at 73.  At the conclusion of the safety plan A.F. was returned home.  T. at 74.  However, when GCCS received notice that Mother had tested positive for THC, A.F. was removed from the home on October 21, 2020.  T. at 74.  On October 22, 2020, A.F. came into the custody of GCCS.  Id.

{¶9}    A. M. had previous involvement with child protective services in Portage County, Ohio.  E.F. had been in foster care in Portage County in 2016 due to sexual abuse of E.F. by his father.   Mother knew of this sexual abuse but did not report the same for over a year and failed to protect her son.  E.F. was out of mother's custody for a year at that time.  Mother completed case plan services for E.F. and regained custody of the child.

{¶10} Dr. Aimee Thomas a psychologist and licensed professional clinical counselor for Lighthouse Family Center met with Mother January 24, 2020. *Parent Evaluation Report*, dated Apr. 1, 2020, GCCS Exhibit 1 at 1. Dr. Thomas completed Mother's parenting evaluation report on Apr. 1, 2020. GCCS Exhibit 1; T. at 8. Dr. Thomas previously evaluated Mother in approximately 2015 for the Portage County Department of Job & Family Services. T. at 7. Mother was previously diagnosed with depression and anxiety and was prescribed Effexor at that time. GCCS Exhibit 1 at 2. Mother refused to sign a release of information to permit Dr. Thomas to review the previous evaluation prepared for PCDJFS. GCCS Exhibit 1 at 1.

{¶11} Dr. Thomas testified that Mother is in the average range of intellectual ability. T. at 13. Mother displayed passive and indifferent behavior and identified herself as a "follower." T. at 13-14. Mother further reported that she relied on third parties to discipline the children or assume parenting responsibilities. T. at 15. Mother further reported that often she would not engage with E.F. because he would become physically aggressive and would hit her. Id.

{¶12} Dr. Thomas diagnosed Mother with Persistent Depressive Disorder, Other Specified Personality Disorder with avoidant, schizoid and depressive traits, Generalized Anxiety Disorder and Alcohol Use Disorder. T. at 16 -17. Dr. Thomas testified that alcohol use could render psychotropic medications ineffective. T. at 17-18. Mother was taking the highest dose of Effexor but still not improving. Id. Dr. Thomas testified that it was evident that the medications Mother was taking were not adequately meeting her depressive symptoms. T. at 18. Dr. Thomas recommended a second opinion or consultation with Mother's psychiatrist regarding her medications because they did not

appear to be working adequately. Id. No evidence was presented that GCCS followed-up on Dr. Thomas' recommendation concerning a second opinion or evaluating the effectiveness of Mother's medication.

{¶13} Dr. Thomas further recommended Mother engage in weekly individual counseling, parenting skill training, and that GCCS explore relative placement. T. at 18-19. Dr. Thomas noted that Mother is intelligent and can learn the needed skills. T. at 19. Her biggest issue was to make sure that Mother's depressive symptoms are not hindering her ability to take the skills she learns and apply them. T. at 19.

{¶14} Dr. Thomas testified that Mother's ability to reunify with the children was poor. T. at 20. Due to the combination of depression, aspects of Mother's personality and the children's special needs, Dr. Thomas did not believe at this point that Mother is going to develop the skill she would need to meet her children's needs. T. at 21. Marginal compliance may not be successful. T. at 22. Mother can complete the recommendations of the case plan; however, if changes do not occur based upon the recommendations of the psychiatrist and counselors Mother's prognosis for reunification is not favorable. T. at 22-23.

{¶15} Dr. Thomas further testified that she had not met with Mother since completing her evaluation in January 2020, a period of over two years as of the hearing date. T. at 20.

{¶16} Mother has completed her Parenting Training; however, it took her three times to do so. T. at 26-27. She was dismissed on two occasions because she failed to attend regularly. Mother is taking the Vivatrol shot because of her alcohol use. Mother has attended Case Management once per month up to February 2022. T. at 28.

{¶17} Mother is employed and no evidence was presented that she is financially unable to provide for her children. T. at 111. No evidence was presented that Mother lacks appropriate housing for the children. Id.

{¶18} Evidence was presented that Mother was consistent with her visitation with the children. T. at 63. Mother rarely missed a scheduled visitation without calling to cancel in advance. The visits went well and progressively improved. T. at 64. Mother was receptive to suggestions and redirection. T. at 63. Mother is bonded with the children, and the children with her. T. at 125-126.

{¶19} GCCS presented evidence that the children are high need children. E.F. had been sexually abused by his father. E.F. has been diagnosed with autism, ADHD, OCD, ODD and PTSD. T. at 94. He attends services for medication management, speech, physical, and occupational therapy. T. at 94. E.F. was removed from his foster home after he physically attacked the adult daughter of the foster mother and then began hitting and punching the foster mother. T. at 96. E.F. was placed into a residential facility. T. at 96-97.

{¶20} A.F. has a chromosome disorder that makes him predisposed to autism, developmental delays, intellectual disabilities, and schizophrenia. T. at 97-98. He receives services at his school for speech, occupational and physical therapy. Id. at 98. A.F. is also on medication. T. at 98.

{¶21} Testimony was presented that Mother's sister R.M. is not a candidate for placement of either child because of her history of involvement with children services in both Portage and Guernsey counties. T. at 105. Maternal great-grandmother J.M. is 78 years old and due to health and safety concerns was found not to be a viable placement

for the children.  T. at 105-106.  Mother was unable to provide telephone numbers or addresses for anyone on the Father's side who could be considered a candidate for placement.  T. at 106-107.

{¶22}  On April 19, 2022, the juvenile court filed a Judgment Entry granting GCCS permanent custody of the children.  The juvenile court found that the children had been in the custody of GCCS for twelve or more months of a consecutive twenty-two-month period.  The court further found that the children could not or should not be place with Mother within a reasonable time.  Finally, the court found that it was in the best interest of the children that the motion for permanent custody be granted.

## Assignments of Error

{¶23}  Mother raises three Assignments of Error,

{¶24}  "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN ARE SERVED BY GRANTING PERMANENT CUSTODY TO THE GUERNSEY COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶25}  "II. THE TRIAL COURT ERRED IN ALLOWING THE MOTION FOR PERMANENT CUSTODY TO PROCEED OR GRANTING THE MOTION DUE TO A LACK OF REASONABLE EFFORTS.

{¶26}  "III. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT PROPERLY CONSIDERING THE BEST INTERESTS OF THE CHILDREN AS REQUIRED BY R.C. 2151.414(D) (1) (b).

**Standard of Appellate Review**

{¶27} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

{¶28} The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression, which the testimony of the witnesses makes upon the trier of

facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Tuscarawas Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, ¶17, *reversed on other grounds, In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829.

**Requirements for Permanent Custody Awards**

{¶29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Temporary Custody for at least 12 out of a consecutive 22-month period-**

**R.C. 2151.414(B)(1)(d).**

{¶32} The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. Id.

{¶33} "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004-Ohio-6411, 818 N.E.2d at 1180, ¶26.

{¶34} R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶35} In the case at bar, the juvenile court found E.F. had been in the temporary custody of GCCS since February 14, 2020. *Judgement Entry* filed Apr. 19, 2022 at 1. [Docket Entry No. 106].

{¶36} In the case at bar, E.F. was removed from the Mother's home on February 14, 2020. T. at 70. Pursuant to R.C. 2151.414(B)(1)(e) sixty days from February 14, 2020 would be April 14, 2020. The juvenile court adjudicated E.F. a dependent child by Judgment Entry filed May 22, 2020. [Docket Entry No. 37]. Accordingly, the "earlier date" that E.F. will be deemed to have enter the temporary custody of GCCS for purposes of R.C. 2151.414(B)(1)(d) is April 14, 2020. GCCS filed the Motion for Permanent custody on October 27, 2021, 1 year, 6 months and 13 days after E.F. is considered to have entered the temporary custody of GCCS.

{¶37} Accordingly, the trial court correctly found that E.F. had been in the temporary custody of the GCCS for over twelve months.

{¶38} The trial court found that A.F. had been in the temporary custody of GCCS since October 20, 2020. *Judgement Entry* filed Apr. 19, 2022 at 1. [Docket Entry No. 106].

{¶39} In the case at bar, A.F. was removed from Mother's home on October 21, 2020. T. at 74. Pursuant to R.C. 2151.414(B)(1)(e) sixty days from October 21, 2020 is Monday, December 21, 2020. The juvenile court adjudicated A.F. a dependent child by

Judgment Entry filed January 22, 2021. [Docket Entry No. 33]. Accordingly, the "earlier date" that A.F. will be considered to have entered the temporary custody of GCCS for purposes of R.C. 2151.414(B)(1)(d) is December 21, 2020. GCCS filed the Motion for Permanent custody on October 27, 2021, 10 months and 6 days after A.F. is considered to have entered the temporary custody of GCCS.

{¶40} Accordingly, A.F. has not been in the temporary custody of GCCS for over twelve months.

### Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a)

{¶41} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶42} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(16) Any other factor the court considers relevant.

{¶43} In the case at bar as set forth above, the juvenile court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the children[2], and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶44} The juvenile court found that GCCS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for E.F. and A.F. to return home safely to Mother. In the instant case, the trial court did not explicitly cite to a single factor in R.C. 2151.414(E). However, the detailed findings in the April 19, 2022 Judgment Entry and the entire record in this matter make it apparent the trial court relied on several of the factors in R.C. 2151.414(E), including R.C. 2151.414(E)(1), failure to remedy conditions and R.C. 2151.414(E)(2), chronic mental illness or intellectual disability. See, *In re B.W.*, 5th Dist. Tuscarawas No. 2016 AP 09 0045, 2017-Ohio-605, ¶ 39, *appeal not allowed*, 149 Ohio St.3d 1409.

---

[2] Report of Guardian ad Litem, filed Apr. 1, 2022. [Docket Entry No. 102].

**{¶45}** The record supports the juvenile court's finding that Mother has not shown consistent sustained progress to have the children returned safely to her custody. She continues to suffer with her mental health while using alcohol and illegal drugs to self-medicate. Dr. Thomas testified that such behavior could interfere with Mother's prescribed psychotropic medications. It does not appear that Mother has been able to apply any behavioral changes that she has attempted to learn. Despite offering numerous services, Mother was unable or unwilling to mitigate the concerns that led to the children's removal.

**{¶46}** A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski*, 11th Dist. Geauga No. 99–G–2241, 2000 WL 1568388(Oct. 20, 2000); *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995). A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278. In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶47} Mother admitted to Dr. Thomas that she has little interaction with E.F. because he would become physically aggressive and would hit her. E.F.'s behavior seems to have gotten worse since being removed from the home; however, Mother has not shown any improvement in her ability to parent E.F. or A.F. E.F. was placed in a residential facility due to his behaviors and special needs and his violence while in the foster home.

{¶48} Mother continues to have the same issues today as she had in the past, i.e., lack of motivation and low self-esteem together with depression.

{¶49} Mother loves and is bonded with her children. However, the evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of her case plan, she was still not able to be a successful parent to the children.

{¶50} We find there is competent and credible evidence to support the trial court's determination that the children cannot be placed with Mother within a reasonable time or should not be placed with Mother.

### Reasonable Efforts

{¶51} Mother further contends the trial court abused its discretion in finding GCCS made reasonable efforts to reunify the children with Mother.

{¶52} The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St. 3d 73, 78, 862 N.E. 2d 816, 821(2007) noted,

[N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151. 01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151. 419' and the agency has not provided the services required by the case plan.

{¶53} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

**{¶54}** R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

**{¶55}** However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19.

**{¶56}** We find there is competent and credible evidence to support the trial court's determination that GCCS's efforts were reasonable and diligent under the circumstances of the case.

**{¶57}** We find that the record supports that GCCS was working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of GCCS. Mother has been involved with children's services in Guernsey and Portage counties since 2016 and has made no significant progress in spite of the various safety plans and services provided to Mother and to each child.

**{¶58}** Having reviewed the record, we find that GCCS made a good faith effort to reunify Mother and her children. Furthermore, the record contains clear and convincing

evidence to support the court's determination that the children could not be placed with Mother.

## The Best Interest of the Child

**{¶59}** An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26.

**{¶60}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

**{¶61}** The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

**{¶62}** No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does

not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶33.

**{¶63}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶64}** In the case at bar, GCCS investigated potential placement with relatives and found none suitable. Further, the evidence establishes that E.F. is presently in a residential facility. E.F.'s violent tendencies make it difficult for him to be placed with A.F. or be successfully returned to Mother. Considering the many obstacles in Mother's life the trial court found the children's need for a legally secure placement cannot be achieved without permanent custody. Nothing in the record before us demonstrates that more time or a return of custody to the Mother will in any way benefit the children.

**{¶65}** In the present case, the trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to GCCS. Upon review of the record, the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.

**{¶66}** In short, the juvenile court's judgment entry demonstrate that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

## Conclusion

**{¶67}** For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to GCCS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶68}** Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's three assignments of error, and affirm the decision of the Guernsey County Court of Common Pleas, Juvenile Court Division.

By Gwin, J.,

Wise, Earle, P.J., and

Hoffman, J., concur