[Cite as *In re D.P.*, 2020-Ohio-6663.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2020-07-074 |
| D.P., et al. | : | O P I N I O N |
| . | | 12/14/2020 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2017-0373; JN2017-0374

Michele Temmel, 6 S. Second Street, Suite 305, Hamilton, Ohio 45011, for appellant, Mother

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Andrew Temin, 264 High Street, Hamilton, Ohio 45011, for Father

Parachute CASA, Amy Ashcraft, 284 N. Fair Ave., Hamilton, Ohio 45011, guardian ad litem

**M. POWELL, J.**

{¶ 1}  Appellant, the mother of D.P. and I.P. ("Mother"), appeals the decision of the

Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of

D.P. and I.P. to appellee, Butler County Department of Job and Family Services, Children

Services Division ("BCDJFS"). For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2} This case involves two children, D.P., born June 29, 2014, and I.P. born October 12, 2016. The children's father ("Father") is not a part of this appeal.

{¶ 3} On November 29, 2017, the juvenile court issued an emergency ex parte order awarding BCDJFS with temporary custody of D.P. and I.P. The juvenile court issued this order shortly after BCDJFS filed a complaint alleging both children were dependent children.[1] In support of its complaint, BCDJFS alleged the Hamilton Police Department removed the children from Mother's and Father's care after the then three-year-old D.P. was discovered in a restaurant bathroom with Father who was "passed out and appeared to be doing drugs." BCDJFS alleged that Mother then arrived at the scene and reported to police that she was homeless.

{¶ 4} The record indicates that Mother also submitted to an oral drug screen that came back positive for THC and fentanyl, whereas Father, who had outstanding warrants for domestic violence and a probation violation, was charged with obstructing official business for providing the police with a false name during this incident. Prior to this incident, BCDJFS alleged that it had received several reports regarding Mother's and Father's substance abuse issues. BCDJFS also alleged that there had been a substantiated claim of physical abuse perpetrated on D.P. after Father was found overdosed on heroin while D.P. was present.

{¶ 5} On February 2, 2018, the juvenile court adjudicated both D.P. and I.P. as

---

1. We note that BCDJFS filed two separate complaints under two separate case numbers, one for D.P. and one for I.P. For ease of discussion, we will address these cases together as if BCDJFS had filed only one complaint under one case number that covered both children.

dependent children. Mother and Father did not appear for the adjudication hearing. The following month, on March 23, 2018, the juvenile court held a disposition hearing and issued a dispositional decision that granted temporary custody of D.P. and I.P. to BCDJFS. Mother and Father also did not appear for the disposition hearing.

{¶ 6} The juvenile court adopted a case plan for Mother and Father at the disposition hearing. The case plan required both Mother and Father to remain drug free and maintain and obtain a safe and stable home free of illegal substances. The case plan also required Mother and Father to complete a substance abuse assessment and any treatment recommendations, submit to random drug screens, and maintain employment that provided them with financial stability. The case plan further permitted Mother and Father to exercise weekly supervised visitation time with the children. Father's visitation time with D.P. and I.P. was later suspended after he failed to engage in any case plan services.

{¶ 7} On June 5, 2018, the juvenile court determined that Mother was an appropriate candidate for its Family Treatment Drug Court ("FTDC") program. However, due to her noncompliance with several FTDC requirements, Mother was subsequently terminated from the program. This includes Mother submitting a drug screen that came back positive for cocaine and Mother missing an additional 19 drug screens, all of which are presumed by BCDJFS to be positive. This also includes Mother being banned from a local drug store due to her alleged "criminal behavior," Mother receiving new "criminal charges," and Mother failing to attend several doctor appointments, case management appointments, court hearings, and other meetings required by the FTDC program.

{¶ 8} On August 21, 2019, BCDJFS moved for permanent custody of both D.P. and I.P. A three-day hearing on BCDJFS' motion for permanent custody was held before a juvenile court magistrate on February 4, 5, and 11, 2020. During this hearing, the

- 3 -

magistrate heard testimony from both Mother and Father, as well as Mother's live-in boyfriend, the father of Mother's then yet unborn child. As part of her testimony, Mother claimed that she was able to take care of D.P. and I.P. even though she was not employed, pregnant, and had no source of income. Mother also testified that if she was just "given a little bit more time" she would "prove" that she could find a job that allowed her to raise D.P. and I.P. "efficiently." Mother made these comments despite the fact that D.P. and I.P. had been out of her custody and care for more than two years.[2]

{¶ 9} On February 24, 2020, the magistrate issued a decision granting BCDJFS' motion for permanent custody of both D.P. and I.P. In so holding, the magistrate determined that it was in the children's best interest to grant permanent custody to BCDJFS when considering both Mother and Father had "failed continuously and repeatedly to substantially remedy the conditions causing [the children] to be placed outside of the home." Mother filed objections to the magistrate's decision on March 9, 2020 arguing the magistrate's decision was not supported by sufficient evidence and was against the manifest weight of the evidence. The juvenile court held a hearing on Mother's objections on June 8, 2020. Shortly thereafter, on June 12, 2020, the juvenile court issued a decision overruling Mother's objections to the magistrate's decision, thereby affirming and adopting the magistrate's decision granting BCDJFS' motion for permanent custody of both D.P. and I.P.

**Appeal**

{¶ 10} Mother now appeals the juvenile court's decision granting permanent custody of D.P. and I.P. to BCDJFS, raising the following single assignment of error for review.

{¶ 11} THE JUVENILE COURT'S DECISION GRANTING THE MOTION FOR

---

2. We note that Mother's testimony was elicited on February 11, 2020, the final day of the three-day permanent custody hearing. This was the same day that Mother was scheduled to appear before the Warren County Court on a charge of theft. When asked if she was worried that a warrant may have been issued for her arrest due to her failure to appear, Mother testified "[a] little bit," but that she had really "never been in any trouble" before and was "supposed to just get a diversion."

PERMANENT CUSTODY TO BUTLER COUNTY CHILDREN SERVICES (BCCS) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Mother argues the juvenile court's decision to grant permanent custody of D.P. and I.P. to BCDJFS was not supported by sufficient evidence and was against the manifest weight of the evidence.

**Permanent Custody Standard of Review**

{¶ 13} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6; *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-071, CA2019-05-072, and CA2019-05-073, 2019-Ohio-4127, ¶ 19. "This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented." *In re L.S.*, 12th Dist. Brown Nos. CA2019-03-001 and CA2019-03-002, 2019-Ohio-3143, ¶ 17, citing *In re: K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10; *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 22.

{¶ 14} "However, even if the juvenile court's decision is supported by sufficient evidence, 'an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence.'" *In re C.S.*, 12th Dist. Clinton No. CA2020-04-006, 2020-Ohio-4414, ¶ 15, quoting *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶

19.  In determining whether a juvenile court's decision is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment."  *In re M.A.*, Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 15, citing *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231, CA2014-11-236, CA2014-11-237, and CA2014-11-238, 2015-Ohio-1343, ¶ 25, citing *Eastley* at ¶ 21.

### Two-Part Permanent Custody Test

{¶ 15} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test.  *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9.  First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).  *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, pursuant to R.C. 2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has

- 6 -

been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

### Best Interest of the Children

{¶ 16} Mother does not challenge the juvenile court's decision finding D.P. and I.P. had been in the temporary of BCDJFS for at least 12 months of a consecutive 22-month period.[3] Mother challenges only the juvenile court's decision finding it was in D.P.'s and I.P.'s best interest to grant permanent custody to BCDJFS.

{¶ 17} When considering the best interest of a child in a permanent custody case, the juvenile court is required under R.C. 2151.414(D)(1) to consider certain enumerated factors. *In re D.E.*, 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 32. These factors include, but are not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child. *In re J.C.*, 12th Dist. Brown No. CA2017-11-015, 2018-Ohio-1687, ¶ 22. "The juvenile court may also consider any

---

3. D.P. and I.P. had remained in the temporary custody of BCDJFS beginning on November 29, 2017 up to and including when BCDJFS moved for permanent custody on August 21, 2019. This constitutes a continuous and consecutive period of 20 months and 23 days. Therefore, pursuant to R.C. 2151.414(B)(1)(d), there is no dispute that the second part of the two-part permanent custody test has been established.

other factors it deems relevant to the child's best interest." *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24.

**Analysis**

{¶ 18} Mother argues the juvenile court erred by finding it was in D.P.'s and I.P.'s best interest to grant permanent custody to BCDJFS because it is "apparent" that she completed the required case plan services and "worked hard" to get the children back under her care. However, despite Mother's claims, it is well established that "successful completion of one's case plan is not dispositive of the issue of reunification." *In re G.C.*, 12th Dist. Butler Nos. CA2016-12-237 thru CA2016-12-240, 2017-Ohio-4226, ¶ 42, citing *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30. But, even if it was, the record clearly establishes that Mother did not complete significant portions of her case plan. As the record indicates, and just as the juvenile court found, this includes Mother failing to adequately address her substance abuse issues, failing to maintain employment that provided her with financial stability, and failing to obtain a safe and suitable housing. This remains true regardless of how diligently Mother claims she had worked to get D.P. and I.P. back under her care.

{¶ 19} The key concern in a permanent custody proceeding is "whether the parent has substantially remedied the concerns that caused the child's removal from the parent's custody." (Emphasis omitted.) *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. The record indicates that Mother did not remedy the concerns that led to the children's removal from her care, let alone substantially remedy those concerns. For instance, as it relates to Mother's failure to maintain suitable housing for herself and the children, the juvenile court found Mother had "ongoing problems" in terms of housing that had persisted "due to circumstances including, but not limited to, her lack of follow-through."

{¶ 20} In reaching this decision, the juvenile court noted that Mother's issues with

housing had been exacerbated by her live-in boyfriend, who the record indicates had an active warrant for his arrest, and whom the juvenile court found to be a "significant concern." Specifically, as the juvenile court noted:

> Mother is currently residing with [her live-in boyfriend] and alleged father of her unborn child. * * * Unfortunately, [Mother's live-in boyfriend] has a troubling history. * * * He has a number of criminal convictions, including drug offenses and offenses of violence. He has spent time in prison and in the CCC program.

{¶ 21} The juvenile court also noted:

> By his own admission, [Mother's live-in boyfriend] has been abusing drugs and/or alcohol since he was 12 years old. He is now 38 years of age and claims that he has been sober for 2 years. Based upon his demeanor in court and upon his other testimony, there is substantial reason to doubt that assertion. * * * When confronted with documentary evidence regarding possible recent drug dealing activity, he asserted his fifth-amendment right to remain silent.

{¶ 22} The juvenile court further noted that Mother's live-in boyfriend readily admitted that he did not complete his own recommended substance abuse treatment. This is in addition to Mother's live-in boyfriend admitting that he has an anger management problem, that he is voluntarily unemployed because he "chooses" not to work, and that he owes money for back child support and unpaid fines stemming from an earlier criminal conviction. The juvenile court additionally noted that neither Mother nor Mother's live-in boyfriend appear to have "any means of supporting a home," thereby calling into question how Mother would be able to subsist if D.P. and I.P. were placed back into Mother's care. This becomes even more troubling when considering Mother was at that time pregnant with her live-in boyfriend's yet unborn child. Finally, mother's live-in boyfriend is a stranger to the children.

{¶ 23} After a thorough review of the record, we find there is sufficient, credible evidence to support the juvenile court's findings regarding both Mother and Mother's live-in boyfriend. Therefore, while Mother claims the juvenile court erred by finding it was in D.P.'s

and I.P.'s best interest to grant permanent custody to BCDJFS because it is "apparent" that she completed her required case plan services and "worked hard" to get the children back under her care, Mother's assertion is simply incorrect. It is instead clear that Mother failed to complete significant portions of her case plan. This includes, as noted above, failing to adequately address her substance abuse issues, failing to maintain employment that provided her with financial stability, and failing to obtain a safe and suitable housing for herself and the children. Mother's claims otherwise lack merit.

{¶ 24} Mother also argues the juvenile court erred by finding it was in D.P.'s and I.P.'s best interest to grant permanent custody to BCDJFS because she has a significant bond with the children, loves them, and cared for them appropriately during her weekly supervised visitation time with them. However, even when accepting all of Mother's claims as true, Mother has still failed to adequately address her substance abuse issues, failed to maintain employment that provided her with financial stability, and failed to obtain a safe and suitable housing for herself and the children. This remains true despite the fact that BCDJFS provided Mother with the necessary referrals and information needed for the services set forth in her case plan that would have assisted Mother in regaining custody of the children in the nearly two years since D.P. and I.P. were removed from her care.

{¶ 25} The practicalities of the situation eliminate all other dispositional alternatives except granting BCDJFS' motion for permanent custody. As indicated, as of the time that hearing on the motion for permanent custody concluded, D.P. and I.P. had been in the temporary custody of the agency for more than two years. Thus, a further extension of temporary custody was prohibited by R.C. 2151.415(D), which provides that "the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was placed into shelter care, whichever date is earlier * * *." Neither placing the children with Mother subject to BCDJFS' protective

supervision, nor granting Mother legal custody, were viable dispositional alternatives due to the factors discussed above concerning Mother's housing situation and unresolved substance abuse issues. Legal custody may not be awarded to a third party as no such party has been identified. Finally, D.P. and I.P. are too young to be placed into a planned permanent living arrangement, which requires that the children be "sixteen years of age or older." R.C. 2151.353(A)(5).

{¶ 26} "'A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.'" *In re D.E.*, 2018-Ohio-3341 at ¶ 60, quoting *In re Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, ¶ 61. The juvenile court's decision does just that. D.P. and I.P. simply cannot wait idly by in hopes that one day Mother can overcome her substance abuse issues, as well as her lack of stable employment, income, and housing. This is particularly true here when considering the children's foster parents have indicated their intent to adopt D.P. and I.P. if permanent custody was granted to BCDJFS. Therefore, despite Mother's claims, we find the juvenile court's decision to grant permanent custody of D.P. and I.P. to BCDJFS was supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, finding no merit to any of Mother's arguments raised herein, Mother's single assignment of error lacks merit and is overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.