**[Cite as *In re M.W.*, 2025-Ohio-1968.]**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| M.W. | : | CASE NO. CA2025-01-010 |
| | : | OPINION AND JUDGMENT ENTRY |
| | : | 6/2/2025 |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 22-D000066

Clouse Law Offices, and Lauren L. Clouse, for appellant, S.K.

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee, Warren County Children Services.

# OPINION

**PIPER, J.**

**{¶ 1}** Appellant ("Mother") appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter, M.W., to appellee, Warren County Children Services ("WCCS").[1] For the reasons outlined below,

1. M.W.'s father is not a part of this appeal.

we affirm the juvenile court's decision.

**{¶ 2}** On June 27, 2013, Mother gave birth to M.W. Nine years later, on November 15, 2022, WCCS filed a complaint alleging M.W. was an abused, neglected, and dependent child. To support these allegations, WCCS claimed that M.W. was suffering from ongoing sexual abuse at the hands of her older brother.[2] WCCS also claimed that there were concerns that Mother was aware of the sexual abuse and did virtually nothing to stop it.[3] Upon receiving WCCS' complaint, the juvenile court granted an emergency ex parte order placing M.W. in the emergency temporary custody of WCCS.

**{¶ 3}** On January 12, 2023, the juvenile court adjudicated M.W. an abused, neglected, and dependent child. The following month, on February 8, 2023, the juvenile court issued a dispositional decision granting temporary custody of M.W. to WCCS.

**{¶ 4}** On October 23, 2024, WCCS moved for permanent custody of M.W. A hearing on WCCS' permanent custody motion was held on January 10, 2025. During this hearing, the juvenile court heard testimony and took evidence from a total of six witnesses. One of those six witnesses was Mother. As part of her testimony, Mother acknowledged that, rather than immediately reporting that M.W. had been sexually abused by her brother, it was instead her "first inclination" to "handle it within the family." This also include Mother testifying "[t]hat's what the internet's for" when asked what protections she would put in place to ensure M.W. was not sexually abused by her brother, or anyone else, ever again.

---

2. It was later discovered that M.W. had not only been sexually abused by her brother, but by four other people, as well. This includes a former babysitter, a friend of her brother, a man identified as her uncle, and a man related to one of Mother's former boyfriends. This resulted in M.W. suffering from significant trauma for which she receives counseling and takes anti-psychotic medication to combat her suicidal ideations and tendencies to engage in self-harm.

3. The record indicates that M.W.'s brother was later adjudicated a delinquent child because of the sexual abuse he inflicted upon M.W. The record also indicates that Mother initially blamed M.W. for the sexual abuse that her brother had inflicted upon her.

**{¶ 5}** On January 15, 2025, the juvenile court issued a decision granting WCCS' motion for permanent custody. In so doing, the juvenile court determined that granting WCCS permanent custody of M.W. was in the child's best interest. In reaching this decision, the juvenile court found Mother had failed "miserably" in her responsibilities as M.W.'s protector by demonstrating "zero protective capacity" over M.W. given her "inability or unwillingness (or both)" to protect M.W. from ongoing and further sexual abuse by her older brother. This also included the juvenile court finding Mother had failed M.W. "in every sense of the word" given that Mother "knew ongoing abuse was being inflicted upon [M.W. by her brother]" and "instead of getting professional help to stop this behavior, Mother chose to handle it 'in-house' and keep it a family matter."

**{¶ 6}** On January 27, 2025, Mother filed a notice of appeal. Following briefing, on May 15, 2025, this matter was submitted to this court for consideration. Mother's appeal now properly before this court for decision, Mother has raised one assignment of error for review.

**{¶ 7}** THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BEST INTEREST OF THE CHILDREN, PURSUANT TO THE FACTORS SET FORTH IN R.C. 2151.414(D), WAS REACHED BY GRANTING PERMANENT CUSTODY TO WARREN COUNTY CHILDREN SERVICES.

**{¶ 8}** In her single assignment of error, Mother argues the juvenile court's decision granting permanent custody of M.W. to WCCS was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

*Sufficiency and Manifest Weight of the Evidence Standards*

**{¶ 9}** "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re D.P.*, 2020-Ohio-6663, ¶ 13

(12th Dist.). "That is to say, the juvenile court's decision to grant permanent custody must be supported by sufficient evidence." *In re P.E.*, 2023-Ohio-2438, ¶ 14 (12th Dist.). Sufficiency of the evidence tests the burden of production. *In re D.D.*, 2024-Ohio-5858, ¶ 20 (12th Dist.). "'[W]hether the evidence is sufficient to sustain the judgment is a question of law.'" *In re A.V.*, 2024-Ohio-1091, ¶ 31 (12th Dist.), quoting *In re Z.J.*, 2023-Ohio-1347, ¶ 27 (1st Dist.). "Questions of law, even in permanent custody cases, are reviewed by this court de novo." *In re N.G.*, 2024-Ohio-31, ¶ 15 (12th Dist.). "In conducting a de novo review, this court independently reviews the record without giving deference to the juvenile court's decision." *In re A.V.*, citing *In re S.C.R.*, 2018-Ohio-4063, ¶ 13 (12th Dist.).

**{¶ 10}** A challenge to the manifest weight of the evidence "'tests the burden of persuasion, not the burden of production.'" *In re N.G.* at ¶ 16, quoting *Magnum Steel & Trading, LLC v. Mink*, 2013-Ohio-2431, ¶ 31 (9th Dist.). "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.*, 2019-Ohio-5367, ¶ 15 (12th Dist.).

*The Two-Part Permanent Custody Test*

**{¶ 11}** The state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a mother's constitutionally protected liberty interest in the care and custody of her child may be terminated. *In re R.K.*, 2021-Ohio-3074, ¶ 14 (12th Dist.), citing *Santosky v. Kramer*, 455

U.S. 745, 759 (1982). In Ohio, it is R.C. 2151.414(B)(1) that sets forth the applicable statutory standard for this case. *In re M.H.*, 2022-Ohio-49, ¶ 30 (12th Dist.). "R.C. 2151.414(B)(1) provides a two-part permanent custody test." *In re D.D.*, 2024-Ohio-5858 at ¶ 22. One part of that two-part permanent custody test, the part that is in dispute here, requires the juvenile court to find the grant of permanent custody to be in the children's best interest.[4] *In re D.K.W.*, 2014-Ohio-2896, ¶ 21 (12th Dist.). This is generally done by utilizing the best-interest factors set forth in R.C. 2151.414(D)(1). *In re S.W.*, 2023-Ohio-118, ¶ 19 (12th Dist.). These factors include but are not limited to: (1) the interaction and interrelationship of the child with the child's parents; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement. R.C. 2151.414(D)(1)(a)-(d). These factors also include the question of whether any of the circumstances listed in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(e).

*Mother's Arguments and Analysis*

**{¶ 12}** The record reflects that the juvenile court considered the best interest factors set forth above when determining that it was in M.W.'s best interest to grant WWCS' motion for permanent custody. Mother challenges the juvenile court's decision by arguing the juvenile court failed to give sufficient weight to certain of those best interest factors. Specifically, Mother argues that the completion of her case plan services, coupled with M.W.'s expressed wishes to return home, should have been taken into "greater

---

4. The other part of that two-part test requires the juvenile court to find that any one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) applies. *In re C.B.*, 2015-Ohio-3709, ¶ 10 (12th Dist.). "This includes a circumstance, often referred to as the '12 of 22' provision, where the subject child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period." *In re A.D.*, 2022-Ohio-736, ¶ 20 (12th Dist.), citing R.C. 2151.414(B)(1)(d). Mother does not dispute that M.W. was in the temporary custody of WCCS for at least 12 months of a consecutive 22-month period prior to WCCS filing its motion for permanent custody. Therefore, for purposes of this opinion, we will focus our attention on what is in dispute; whether it was in M.W.'s best interest for the juvenile court to grant permanent custody to WCCS.

consideration" by the juvenile court when ruling on WCCS' motion for permanent custody. Mother also argues that the juvenile court failed to give sufficient weight to there being no mental health or drug and alcohol concerns related to Mother, as well as the fact that Mother had "provided stable housing and income for the household for many years," when deciding WCCS' permanent custody motion. This is in addition to Mother arguing that the juvenile court failed to consider her and M.W.'s bond and her ability to provide M.W. with a secure permanent placement "right now," whereas WCCS could only provide M.W. with a "group home facility, which even the facility does not believe is appropriate," when deciding how to rule on WCCS' motion for permanent custody.

**{¶ 13}** Following our review of the record, we find no merit to any of Mother's arguments. In so holding, we note that "the completion of case plan requirements does not preclude a grant of permanent custody." *In re K.K.*, 2023-Ohio-400, ¶ 51 (12th Dist.). This is because, as is now well established, "a case plan is merely a means to a goal and not a goal in itself." *In re B.O.*, 2024-Ohio-1732, ¶ 50 (12th Dist.). We also note that, as it relates to Mother's supposed bond to M.W. and M.W.'s expressed wishes to return home, these are just two of the many factors to be considered and "no one factor is entitled to more weight than the other factors." *In re P.M.*, 2024-Ohio-4958, ¶ 36 (12th Dist.).

**{¶ 14}** Moreover, despite Mother's assertions that she could provide M.W. with a secure permanent placement "right now," whereas WCCS supposedly could not, the juvenile court determined that M.W.'s basic needs were being met in her current group home placement and that M.W. was "doing as well as can be expected" in that group home setting. This is in addition to the juvenile court finding M.W.'s only chance at stability was not with Mother, but rather in the permanent custody of WCCS so that WCCS could arrange for M.W.'s adoption. Adoption, as the juvenile court determined, was the best and only chance for M.W. to achieve the "stable family home" that she needs. We find no error

in the juvenile court's findings.

**{¶ 15}** In reaching this decision, we note that a child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. *In re D.E.*, 2018-Ohio-3341, ¶ 60 (12th Dist.). The juvenile court's decision to grant WCCS' motion for permanent custody does just that. This is because, as the juvenile court found, Mother had failed "miserably" in her responsibilities as M.W.'s mother by demonstrating "zero protective capacity" over M.W. given Mother's "inability or unwillingness (or both)" to protect M.W. from ongoing and further sexual abuse at the hands of her older brother. This is in addition to the juvenile court finding Mother had failed M.W. "in every sense of the word" given that "she knew ongoing abuse was being inflicted upon [M.W. by her older brother]" and "instead of getting professional help to stop this behavior, Mother chose to handle it 'in-house' and keep it a family matter." Again, we find no error in the juvenile court's findings.

**{¶ 16}** "A child's life . . . is not something the juvenile court should take a gamble on. This holds true no matter how good the odds may seem." *In re M.G.*, 2023-Ohio-1316, ¶ 58 (12th Dist.). Therefore, finding no merit to any of the arguments raised by Mother herein, Mother's single assignment of error challenging the sufficiency and manifest weight of the evidence lacks merit and is overruled. Accordingly, for the reasons outlined above, and finding no merit to Mother's single assignment of error, Mother's appeal challenging the juvenile court's decision granting permanent custody of M.W. to WCCS is denied.

**{¶ 17}** Judgment affirmed.

BYRNE, P.J., and M. POWELL, J., concur.

# JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge