[Cite as *In re Z.P.*, 2026-Ohio-1847.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: Zo.P.<br>(DOB: 7-7-15)<br><br>(Alonzo P., Appellant) | Case No. 2025 CA 00151 |
| IN THE MATTER OF: Zu.P.<br>(DOB: 3-31-17)<br><br>(Alonzo P., Appellant) | Case No. 2025 CA 00152 |
| IN THE MATTER OF: Zi.P.<br>(DOB: 4-30-20)<br><br>(Alonzo P., Appellant) | Case No. 2025 CA 00153 |
| IN THE MATTER OF: Zo.P.<br>(DOB: 7-7-15)<br><br>(Mercedee C., Appellant) | Case No. 2025 CA 00156 |
| IN THE MATTER OF: Zu.P.<br>(DOB: 3-31-17)<br><br>(Mercedee C., Appellant) | Case No. 2025 CA 00157 |
| IN THE MATTER OF: Zi.P.<br>(DOB: 4-30-20)<br><br>(Mercedee C., Appellant) | Case No. 2025 CA 00158 |

Opinion & Judgment Entry

Appeal from the Court of Common Pleas of Stark County, Family Court Division, Case Nos. 2023 JCV 00392, 2023 JCV 00393, and 2023 JCV 00394

Judgment: Affirmed

Date of Judgment: May 19, 2026

BEFORE: Andrew J. King, Robert G. Montgomery, and David M. Gormley, Judges

APPEARANCES: Richard D. Hixson (Micheli, Baldwin, Mortimer, McLendon, & Whitacre LLP), Zanesville, Ohio, for Appellant Alonzo P. (the children's father);

Kathaleen S. O'Brien, Canton, Ohio, for Appellant Mercedee C. (the children's mother);
James B. Phillips Jr., Canton, Ohio, for Appellee Stark County Job & Family Services

*Gormley, J.*

**{¶1}**   Mother Mercedee C. and Father Alonzo P. each challenge the judgment of the Stark County Family Court awarding permanent custody of their three children — Zo.P., Zu.P., and Zi.P. — to Stark County Job and Family Services (the "Agency").  In her appeal, Mother contends that the evidence presented at the permanent-custody hearing did not support either the trial court's best-interest findings or its overall conclusion that custody of the children should not be placed with her.  Father, in his appeal, contends that the trial court erred by failing to appoint replacement legal counsel for Mother and by denying his motion to continue the second day of the hearing.  For the reasons explained below, we affirm the trial court's judgment.

**The Key Facts**

**{¶2}**   A lengthy history exists between the Agency and this family, stretching back to 2019 and consistently centering on the same set of concerns: Mother's mental health, multiple incidents of domestic violence between the parents, homelessness, a lack of necessities for the children, and Mother's failure to follow through on case-plan services.  Those concerns resurfaced in 2023, when the Agency once again became involved with the family on the same grounds, this time compounded by safety concerns tied to Mother's disciplinary practices with her children.

**{¶3}**   The Agency took emergency temporary custody of the children in 2023, and two months later the trial court adjudicated them dependent, placed them in the Agency's temporary custody, and approved a case plan.  Mother's case plan called for her to complete a parenting assessment at Lighthouse Family Center (a counseling and therapy

provider in Canton), complete mental-health and substance-abuse treatment, submit to random drug testing, complete a parenting-skills program at Goodwill Industries in Canton, and maintain stable housing and employment. Father's case plan called for him to complete assessments at CommQuest and Melymbrosia Associates — both of which offer mental-health and addiction-recovery services in Canton — and to follow the resulting recommendations.

{¶4} Over the next two years, Mother made what the trial court described as partial but ultimately insufficient progress. She completed two parenting assessments and an anger-management assessment, engaged with mental-health providers Phoenix Rising and Ever Well, and completed a substance-abuse assessment. Yet she did not consistently comply with her drug-testing obligation, continued to use marijuana in a manner that was medically ill-advised because she was taking prescribed psychiatric medication, and never stabilized on her medications to the point where she could participate in the parenting-skills program at Goodwill. Her conduct when she visited the Agency's office was likewise a recurring problem. After repeated disruptive incidents, she was barred from the Agency's premises, and her visits with her children were suspended. And all three of her treatment providers voiced continuing concerns about her ability to regulate her anger. Mother last visited the children on February 7, 2024.

{¶5} Father's progress was even more limited. He did not complete his assessment at CommQuest, and though he completed his Melymbrosia assessment, he never attended the recommended anger-management program there. He was convicted in April 2025 on a felonious-assault charge and is now serving an indefinite prison term with a minimum length of eight years. Father last visited the children on March 29, 2024.

**{¶6}** The Agency sought permanent custody of the children in early 2025, and the two-day hearing began in April of that year with both parents present and with Father represented by counsel. The second day of the hearing was originally scheduled for July 2025 but was continued at Father's request after the prison where he was then housed failed to make him available by video. On the rescheduled date in October of that year, the prison again failed to move Father into the room where inmates can participate in video hearings. Father's counsel asked that Father's portion of the hearing be continued so that he could testify, but the trial court denied that request, finding that Father's interests could be adequately represented by his counsel. Father's counsel then cross-examined the Agency's witnesses and assisted Mother during the best-interest portion of the hearing. Mother herself testified at length during the best-interest phase. After the hearing, the trial court issued judgment entries terminating both parents' parental rights and granting permanent custody of the children to the Agency. Both parents now appeal.

## The Trial Court Did Not Err When It Terminated Mother's Parental Rights

**{¶7}** In her first assignment of error, Mother argues that the Agency failed to support its permanent-custody request with clear and convincing evidence, and she argues, too, that the trial court's decision was against the manifest weight of the evidence. In her second assignment of error, Mother similarly challenges the trial court's best-interest finding.

**{¶8}** The Supreme Court of Ohio has explained that the appropriate appellate standard of review of a trial court's permanent-custody decision is the manifest-weight standard or a sufficiency-of-the-evidence standard (or both), depending on the nature of the arguments presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 11.

**{¶9}** For manifest-weight review, an appellate court must "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14. Our review of a sufficiency-of-the-evidence challenge, on the other hand, "is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re D.P.*, 2020-Ohio-6663, ¶ 13 (12th Dist.).

**{¶10}** A trial court "may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency" and that any one of the five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. R.C. 2151.414(B)(1). R.C. 2151.414(B), therefore, "establishes a two-pronged analysis." *In re K.H.*, 2025-Ohio-21, ¶ 30 (5th Dist.). "In practice, the trial court will usually determine whether one of the . . . circumstances delineated in R.C. 2151.414(B)(1)(a) through [(e)] is present before proceeding to a determination regarding the best interest of the child." *Id.*

**{¶11}** Clear and convincing evidence is evidence that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.* at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

A.  The Trial Court's Five-Factor Findings Are Supported by Clear and Convincing Evidence

{¶12} R.C. 2151.414(B)(1) lists five scenarios that can serve as a prerequisite for a trial court's consideration of a permanent-custody request.  "As long as one of these factors is present, then the first prong of the test is satisfied." *In re A.S.*, 2024-Ohio-2099, ¶ 36 (5th Dist.).

{¶13} The trial court here found that three of those factors were established: (1) under R.C. 2151.414(B)(1)(a), that the children cannot or should not be placed with Mother because of her lack of progress on the case plan; (2) under R.C. 2151.414(B)(1)(b), that Mother had abandoned the children; and (3) under R.C. 2151.414(B)(1)(d), that the children had been in the Agency's temporary custody for more than 12 months during a consecutive 22-month period.  Mother's brief challenges only the (B)(1)(a) finding, and neither the (B)(1)(b) nor the (B)(1)(d) finding is mentioned anywhere in her argument.  Because only one R.C. 2151.414(B)(1) factor must be established, the unchallenged findings are independently sufficient to satisfy the first prong, and Mother's failure to address them is dispositive.  *In re C.P.*, 2025-Ohio-5705, ¶ 9 (5th Dist.).

{¶14} The record amply supports both unchallenged findings in any event.  The children were placed in the Agency's temporary custody on April 6, 2023 and remained there through both days of the permanent-custody hearing in 2025, a period well in excess of 12 months.  And Mother last visited the children on February 7, 2024: more than 20 months before the second day of the two-day hearing.  Under R.C. 2151.011(C), a child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days."

{¶15} The contested R.C. 2151.414(B)(1)(a) finding is likewise supported. An Agency caseworker testified at the hearing in 2025 that Mother had not completed her case plan and had not reduced the risk that she posed to the children when the case had started in 2023. Both Phoenix Rising and Ever Well Community Health — two behavioral-healthcare providers in northeast Ohio — voiced continuing concerns about Mother's mood regulation and her anger, and Mother could not be referred to Goodwill for a parenting class because her mental-health symptoms were never sufficiently controlled through her medications to allow her to engage effectively in therapy. Psychologist Aimee Thomas — who evaluated Mother's parenting skills — testified that Mother's issues with mood regulation and anger control were negatively affecting her ability to parent and that Mother was "not safe to parent children" as of the first hearing date in April 2025.

{¶16} After weighing all of these matters, we find that clear and convincing evidence in the record supports the trial court's finding that Mother failed to remedy the conditions causing the children to be placed outside her care.

{¶17} We further conclude that the trial court's finding was not against the manifest weight of the evidence. Mother's only substantive argument to the contrary is that she "substantially complied" with her case plan. But substantial compliance does not in itself entitle a parent to reunification. *In re A.F.*, 2022-Ohio-3753, ¶ 46 (5th Dist.) ("A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification . . . [T]he case plan is simply a means to a goal, but not the goal itself").

{¶18} Mother's first assignment of error is overruled.

B. Granting Permanent Custody Is in the Children's Best Interest

**{¶19}** As for the second prong of the permanent-custody test — whether permanent custody is in a child's best interest — the trial court must consider all relevant factors, including those listed in R.C. 2151.414(D)(1). "A child's best interests are served" when the child is placed in a permanent situation that "fosters growth, stability, and security." *In re M.K.*, 2023-Ohio-3786, ¶ 36 (5th Dist.).

**{¶20}** The children have been placed since April 2024 with their paternal grandmother in Louisiana. Testimony at the hearing indicated that they are safe, stable, and happy, and they have told the caseworker that they wish to remain there. No emotional connection appears to exist between the children and Mother, and the children have indicated that they do not want to see or visit her. The children have been in the Agency's custody without interruption since April 2023. The paternal grandmother wishes to adopt the children rather than receive only legal custody, citing concerns about Mother's behavioral history. A guardian ad litem for the children also recommended a grant of permanent custody to the Agency. Clear and convincing evidence supports the trial court's conclusion that permanent custody serves the children's best interests, and that conclusion is not against the manifest weight of the evidence.

**{¶21}** Because both prongs of the permanent-custody test are met, both of Mother's assignments of error are overruled.

C. <u>We Need Not Address Mother's Suggestion That She Was Improperly Denied Legal Representation</u>

**{¶22}** We note that Mother's first assignment of error briefly mentions that she was "denied legal representation." She gives us no developed argument on that question, though, including no citation to any legal authorities, no analysis of the trial court's rulings on her requests for appointed counsel (after she refused to work with her first

attorney and after her second attorney withdrew, citing a breakdown in communication), and no explanation of any harm she may have suffered by representing herself.

{¶23} Under App.R. 16(A)(7), an appellant must support each assignment of error with "[a]n argument containing the contentions of the appellant with respect to each assignment of error . . . with citations to the authorities, statutes, and parts of the record on which appellant relies," and an appellate court "may disregard an assignment of error . . . if the party raising it . . . fails to argue the assignment separately in the brief." App.R. 12(A)(2). We decline to address an argument that Mother has not developed for us.

## The Trial Court Did Not Err When It Terminated Father's Parental Rights

{¶24} Father also raises two assignments of error of his own. In one, he argues that the trial court erred and caused harm to him by failing to appoint a third attorney for Mother after she clashed with her first two court-appointed attorneys. And in his other argument, Father claims that the trial court violated his right to due process by declining to delay the second day of the permanent-custody hearing.

### A. Father Has Not Shown That He Was Harmed by Mother's Lack of Legal Counsel

{¶25} Father concedes — as he must — that he cannot prevail in his challenge to the trial court's rulings on Mother's requests for additional appointed counsel unless those rulings "actually prejudiced" him. *In re X.H.*, 2022-Ohio-779, ¶ 9 (9th Dist.).

{¶26} Father's theory of prejudice is that he was unexpectedly absent from the second day of the hearing because the prison failed to facilitate his video appearance, and thus, he says, his only remaining avenue to advance his own interests at that hearing was through Mother herself. Had she been assisted by counsel that day, the argument goes,

Mother could have presented evidence and arguments in furtherance of the position Father wished to advance.

{¶27} That theory is far-fetched and not supported by the record. Father's own counsel acknowledged on the second day of the hearing that he was unaware of the content of Father's intended testimony. The record does not establish what different evidence or arguments a represented Mother would have presented and does not support Father's view that the trial court would have reached a different conclusion had Mother had counsel. We see no actual prejudice to Father flowing from the trial court's refusal to provide a third appointed attorney to Mother after she could not get along with her first two attorneys.

{¶28} Father's first assignment of error is overruled.

B. The Trial Court Did Not Abuse Its Discretion When It Denied Father's Motion to Continue the Hearing

{¶29} We review under the abuse-of-discretion standard a trial court's decision to grant or deny a continuance request. *Hartt v. Munobe*, 67 Ohio St.3d 3, 9 (1993). An abuse of discretion connotes more than a mere error in law or judgment and entails an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶30} In evaluating whether the trial court abused its discretion by denying a continuance request, we apply a balancing test and consider (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel, and court, (4) whether the delay was for legitimate reasons or was instead dilatory, purposeful, or contrived, (5) whether the party contributed to the circumstances giving rise to the request, (6) whether

denying the continuance resulted in identifiable prejudice to the party's case, and (7) the complexity of the case. *In re Gibby*, 2004-Ohio-2708, ¶ 28-29 (5th Dist.).

{¶31} And where — as in this case — the denial of a continuance request implicates a parent's fundamental liberty interest in the care and custody of his or her child or children, we examine whether the proceeding as a whole was fundamentally fair under due-process principles. *Id.* at ¶ 24-25.

{¶32} We cannot say that the trial court abused its discretion here by declining to delay the second day of the hearing. The case had been pending for more than two and a half years, the permanent-custody motion had been pending for more than seven months, and the children — placed out of state and awaiting adoption — had a substantial interest in finding a permanent home. The trial court had already granted one similar continuance request from Father, prompting the court to push back the second day of the hearing from July 2025 until October of that year. The trial court could reasonably have doubted on that latter date whether yet another delay would have enabled Father to participate in the hearing, given the seemingly recurring difficulties he was having in lining up the video-conferencing option at the prison where he was housed.

{¶33} Nor did the denial of a continuance offend due process. An incarcerated parent's right to be present at a permanent-custody hearing is not absolute, and that right is adequately protected when the parent is represented by counsel who actively participates in the proceedings. *In re T.B.*, 2019-Ohio-1742, ¶ 22 (5th Dist.); *In re R.H.*, 2012-Ohio-1811, ¶ 10 (5th Dist.).

{¶34} Father was represented throughout both days of the hearing by an attorney who fully participated in cross-examining Agency witnesses, attacking the abandonment allegation, examining the guardian ad litem about Father's contacts with the children, and

assisting Mother during the best-interest portion. The trial court expressly found that Father's interests could be protected through his counsel, and the record supports that finding.

{¶35} Father's second assignment of error is overruled.

{¶36} For the reasons explained above, the judgment of the Family Court Division of the Court of Common Pleas of Stark County is affirmed. Costs in each case are to be paid by appellants Mercedee C. and Alonzo P.

By: Gormley, J.;

King, P.J. and

Montgomery, J. concur.